AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.

JON ROGERS

**CRIMINAL COMPLAINT**

CASE NUMBER: 8:02-M-434 TGW

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about September 18, 2002, in Pinellas County, in the Middle District of Florida, defendant did knowingly and intentionally possess a quantity of a mixture or substance containing a detectable amount of gamma-butyrolactone (GBL), a controlled substance, in violation of Title 21, United States Code, Section 844(a). I further state that I am a Special Agent with Drug Enforcement Administration, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

I certify the foregoing to be a true and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida
By: [signature]
Deputy Clerk

[signature]
Signature of Complainant
SCOTT A. ALBRECHT, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

September 19, 2002 at Tampa, Florida

THOMAS G. WILSON
United States Magistrate Judge
Name & Title of Judicial Officer

[signature]
Signature of Judicial Officer

SCANNED

N:\aporcelli\Rogers_Jon\P_Complaint.frm

# AFFIDAVIT

I, Scott A. Albrecht, being first duly sworn, hereby depose and say:

1. I am a Special Agent currently employed by the Drug Enforcement Administration (DEA), Tampa District Office. I have been employed by the DEA for the last five years. For six 1/2 years prior to my employment with the DEA, I was employed as a Deputy U.S. Marshal, investigating a variety of violations of Titles 18 and 21 of the United States Code. During my employment with DEA, I have almost exclusively investigated violations of controlled substances laws, Title 21, United States Code;

2. During my tenure as a law enforcement officer, I have personally been involved in numerous criminal investigations related to the trafficking in controlled substances, such as gamma-hydroxybutyric acid (GHB); gamma-butyrolactone (GBL); 1,4 butanediol (BD) and a number of other illegal drugs;

3. The information contained in this affidavit was gathered by myself, other agents of the DEA, other law enforcement officers whom I believe to be reliable. This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause to charge Jon Rogers with possession of the controlled substance gamma-butyrolactone (GBL), in violation of Title 21, United States Code, Section 844(a).

4. In July, 2002, I received information from DEA Special Agent Steven Will, DEA - Buffalo Resident Office, notifying me of a joint investigation being conducted by the DEA, the United States Postal Inspection Service (USPIS), and the United States Customs Service (USCS) into the internet sale of gamma-butyrolactone (GBL) and 1,4 butanediol (BD); controlled substance analogues of gamma-hydroxybutyric acid (GHB), pursuant to Title 21 United States Code, Section 802(32). Title 21 United States Code, Section 802(32)(A) provides:

   ...[t]he term "controlled substance analogue" means a substance--

   *(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;*

   *(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or*

   *(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central*

> *nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.*

Title 21, United States Code, Section 813 (Treatment of controlled substance analogues), provides:

> *A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I.*

Gamma-hydroxybutyric acid (GHB), commonly known as a "date rape drug," is a central nervous system depressant and a Schedule I controlled substance. Based on my training and experience, and what has been related to me by DEA agents, I am aware that gamma-hydroxybutyric acid (hereinafter "GHB"), gamma-butyrolactone (hereinafter "GBL"), and 1-4 butanediol (hereinafter "BD") are central nervous system depressants which, when ingested, produce euphoric and hallucinogenic states. Further, GHB and its analogues GBL and BD have been known to be used for their alleged role as a growth hormone, and have been widely used to assist in the commission of sexual assaults. GHB/GBL/BD are commonly ingested as "party drugs" or "club drugs." GHB has no approved medical use, and became a Schedule I controlled substance on March 13, 2000. Combining GBL with sodium hydroxide or potassium hydroxide, through a simple one-step procedure, produces GHB. GBL and BD are both industrial solvents, and because GBL and BD closely relate to GHB in chemical structure and have substantially similar stimulant, depressant, or hallucinogenic effects on the central nervous system when ingested, GBL and BD are considered analogues of GHB. When ingested into the body, natural enzymes found in the body convert GBL and BD into the schedule I controlled substance GHB.

5. Currently, a narcotics investigation is focusing on the drug trafficking activities of Daniel Pelchat and his associates, as well as others yet unknown. Daniel Pelchat is believed to be unlawfully trafficking drugs through the websites identified as PELCHATLABS.COM, CHEMSUPPLIERS.COM, CHEMS4U.COM, SOLVENTSPECIALIST.COM, and EUROPEANCOSMETICSLABS.COM.

6. During April 2001, DEA Diversion Investigators contacted the BASF Corporation regarding the uses for GBL. According to BASF Corporation, (which manufactures 40% of the GBL produced in the United States), there are basically three (3) legitimate uses for GBL. The first legitimate use for GBL is in the manufacture of plastics. The second legitimate use is as a carrier for agricultural chemical solutions. The GBL binds to the active chemicals in the agricultural solution making it easier to apply. The third legitimate use is as a cleaning solvent for companies that make computer hardware and telecommunications equipment. According to BASF Corporation, because GBL has no odor and it doesn't conduct electricity, it is used in the electronics industry to clean sensitive electronic equipment such as computer motherboards.

7. On or about August 10, 2002, and continuing on to the present, Special Agent Will advised me that he had identified the names and addresses of individuals who had placed internet orders of GBL and or BD from Daniel Pelchat's websites since August 1, 2002, as well as some orders that were placed in the months preceding August, 2002. In addition, the merchandise that is being ordered was also identified. Special Agent Will provided me and other DEA Special Agents around the United States with lists containing names and addresses of individuals who had placed orders via Daniel Pelchat's websites.

8. As of September 18, 2002, using information provided by Special Agent Will, I have identified a number of individuals in the greater Tampa Bay area whom have ordered GBL, BD and/or GHB kits under the guise of ordering: "contact cement remover," "nail enamel remover," "ink cleaner," and "ink stain remover." Further, as of September 18, 2002, Tampa based U.S. Postal Inspector Ed Berger has intercepted, from the "mail stream," in excess of 54 parcels from Pelchat Labs, or its subsidiaries, addressed to individuals in the greater Tampa Bay area.

9. One individual who was identified as ordering "nail enamel remover" from the Pelchat websites was Jon Rogers, ordering the shipment to be mailed to the address: 296 Plymouth St., Safety Harbor, FL 34695. Rogers placed his order on or about September 8, 2002.

10. On August 26, 2002 Inspector Berger intercepted a parcel addressed to an individual named April Forrest at 296 Plymouth St., Safety Harbor, FL 34695. Following interception of the aforementioned- April Forrest parcel, Inspector Berger applied for and received a search warrant relating to said package from U.S. Magistrate Judge Pizzo. Upon the opening of the package and inspecting its contents, it was determined that the package contained three (3) 260 milliliter bottles of green colored liquid marked "nail enamel remover." A subsequent test by a DEA chemist confirmed that the substance marked as "nail enamel remover" was, in fact, the GHB analogue GBL.

11. On September 16, 2002 Inspector Berger intercepted a parcel addressed to an individual named Jon Rogers at 296 Plymouth St., Safety Harbor, FL 34695. This parcel was identical (size, weight, and postal markings) as to the aforementioned April Forrest parcel.

12. In addition to the aforementioned described parcel, I have identified that Jon Rogers has ordered at least one (1) additional order of "nail enamel remover" (GBL) from Pelchat websites. This one (1) additional packages of "nail enamel remover" (GBL) was ordered from Daniel Pelchat's websites on or about June 1, 2002. Further, I have identified that there were at least two (2) additional orders of "nail enamel remover" (GBL) ordered from Daniel Pelchat's websites. These orders were placed July 7, 2002 and July 26, 2002.

13. On the afternoon of September 18, 2002 agents proceeded to the address 296 Plymouth St., Safety Harbor, FL 34695 and made contact with Jon Rogers. DEA S/A Dale Van Dorple and Postal Inspector Roselyn Roker'arzu identified themselves and asked Jon Rogers if they could talk with Jon Rogers inside the residence. Jon Rogers invited S/A Van Dorple and Inspector Roker'arzu inside his residence.

14. S/A Van Dorple interviewed Jon Rogers. Jon Rogers advised that he has lived at his residence for approximately 1 ½ years with his fiancé, April Forest.

15. S/A Van Dorple then presented two packages which had Jon Rogers name on one and April Forest name on the other. Both packages listed 296 Plymouth Street in Safety Harbor, FL as the delivery address. S/A Van Dorple asked Jon Rogers what the packages contained. Jon Rogers advised that they contained nail stripper. Jon Rogers advised that April Forest did fingernails on the side.

16. S/A Van Dorple asked Jon Rogers why one package was addressed to Jon Rogers and one package was addressed to April Forest. Jon Rogers said that his credit cards were beyond their limit and he utilized April Forest credit card to make orders. S/A Van Dorple asked who had ordered the packages. Jon Rogers advised that he ordered the packages.

17. Inspector Roker'arzu asked Jon Rogers if he would be willing to open the package that was addressed to him. Jon Rogers said he would and opened the package. The package was found to contain three 260 milliliter bottles of nail enamel remover.

18. S/A Van Dorple then read Jon Rogers his Miranda warnings from a DEA issued Miranda card as witnessed by Inspector Roker'arzu. Jon Rogers said that he understood his rights and agreed to talk with law enforcement.

19. Jon Rogers advised that he new the nail enamel remover was GBL and used the GBL for personal consumption. Jon Rogers stated that he has been using GHB/GBL for approximately six years. Over the past year, Jon Rogers admitted to getting a package containing three bottles of GBL every six weeks. Jon Rogers said he had been obtaining the GBL from European Cosmetics Labs., over the Internet. Prior to obtaining the GBL from European Cosmetics Labs., Jon Rogers had obtained GBL from different fitness companies.

20. Jon Rogers advised that he mixes a half bottle of nail remover with a bottle of Potassium Hydroxide. He then mixes it with water and heats the product to make GHB. Jon Rogers said this mixture usually yields approximately twenty (20) ounces of GHB.

21. Jon Rogers stated that he obtains the Potassium Hydroxide from a company on the Internet known as Vegean Salt Works. I know Vegean Salt Works to be an internet based supplier of Potassium Hydroxide which is frequently utilized to purchase Potassium Hydroxide by individuals to use in the production of GHB.

22. Jon Rogers then signed a DEA consent to search form for his residence. S/A Van Dorple found a shoe box containing seven (7) bottles of Potassium Hydroxide in the bedroom closet. Also found with the shoe box was a digital scale and a graduated (ml.) flask. Jon Rogers voluntarily went on his computer and printed out several computer receipts for past GBL/Potassium Hydroxide orders.

Based on the foregoing, I believe there is probable cause to charge Jon Rogers with possession of the controlled substance gamma-butyrolactone (GBL), in violation of Title 21, United States Code, Section 844(a).

FURTHER AFFIANT SAYETH NAUGHT.

SCOTT A. ALBRECHT, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence
this 19th day of September, 2002.

THOMAS G. WILSON
United States Magistrate Judge